# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CENTRAL DUPAGE HEALTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05 C 0241 |
| | ) |
| 3M COMPANY F/K/A MINNESOTA | ) Judge John W. Darrah |
| MINING AND MANUFACTURING | ) |
| COMPANY, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Central DuPage Health ("CDH"), filed suit against Defendant, 3M Company ("3M"), for conduct arising out of an agreement for installation and delivery of 3M software. Count I alleges a breach of contract, Count II alleges fraud, Count III alleges breach of warranty, Count IV alleges negligent misrepresentation, and Count V alleges violation of the Illinois Consumer Fraud and Deceptive Trade Act ("ICFA"). Presently pending before the Court is 3M's Motion to Dismiss Counts II, IV, and V and a Motion to Strike the demand for certain damages.

## BACKGROUND

A reading of CDH's complaint supports the following summary of the alleged conduct of the parties.

CDH is a non-profit health system serving the residents of DuPage County, Illinois. CDH desired to implement an integrated clinical information system that would promote safer patient care by allowing clinicians to access and interact with patient information from a single point of access.

In July 1999, CDH sent out a request for proposals to several hospital software system vendors, searching for a product that, when fully installed and implemented, would act as a fully integrated computer-based patient record.

3M, among others, responded to the request and proposed that CDH purchase 3M's "Care Innovation" software. The system included several components, including a clinical data repository, a master patient index, a healthcare data dictionary, a clinical workstation, and alert management software components. 3M claimed that the clinical workstation would provide access to the complete patient record in the database for reviewing patient information and would serve as an input device to collect additional information.

In the response to the request for a proposal, in oral and written correspondence, and during a visit to CDH, 3M represented that Care Innovation provided efficient centralized access to a patient's lifetime medical record at the point of care. 3M stated that users of Care Innovation could access, analyze, and add to the clinical data repository at the point of care and that it would satisfy CDH's need for an interactive electronic medical database. 3M further represented that the clinical workstation would enhance the patient care processes because it allowed processes such as the physician workflow tools and document signing. 3M stressed Care Innovations' "open architecture," allowing current and future use of the clinical data repository. 3M represented that their commitment to the clinical data repository and future applications was for the "long term."

CDH chose 3M based on, but not limited to, 3M's reputation, commitment to the industry, promise of continued research, development and support for the care innovation software; however, what mostly set 3M apart was the clinical workstation application. Features of the clinical

workstation were to include physician inbox, messaging, order entry, documentation and document signing.

In reliance on the representations by 3M, CDH and 3M negotiated a software license agreement effective as of January 25, 2000. CDH paid in excess of $4,000,000 for the purchase of the software, support, installation fees, training, and related hardware. The first component of the software was installed and went live in January 2001. Installation of the remaining software was never completed, and problems with the installation and support occurred.

Problems with the installation and support were so severe that on February 20, 2001, James E. Thompson, M.D., a CDH physician and Medical Director, wrote to 3M's CEO and Chairman of the Board outlining the problems. The next day, 3M wrote CDH, and other Care Innovation customers, and advised that 3M was not going to deliver several software components that it had promised under the agreement, including the clinical workstation. In March 2001, 3M, after significant negative customer reaction, announced the interactive function of the clinical workstation would not be eliminated but would serve as a viewer only.

3M's decision not to deliver the interactive functionality of the clinical workstation and other components rendered nearly all of the other products purchased by CDH useless, or significantly decreased in value. In 2002, it was deemed necessary for CDH to replace all of the 3M software. By the end of 2005, CDH will no longer use the Care Innovation software for patient care.

## ANALYSIS

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.* 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead

3

the facts or the elements of a claim, with the exception found in Federal Rules of Civil Procedure 9. See *Swierkiewicz v. Sorema,* 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson,* 288 F.3d 761, 764 (7th Cir. 2002). A filing under Federal Rule of Civil Procedure need not contain all the facts that will be necessary to prevail. It should be "short and plain," and it suffices if it notifies the defendants of the principal events. See *Hoskins v. Poelstra,* 320 F.3d 761, 764 (7th Cir. 2003). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize the facts, consistent with the complaint that would make out a claim." *Graehling v. Village of Lombard, Ill.,* 58 F.3d 285, 297 (7th Cir. 1995). The simplified notice pleading relies upon liberal discovery and summary of motions to define disputed issues and facts and to dispose of unmeritorious claims. See *Swierkiewicz,* 534 U.S. at 513.

The Defendant presents several arguments as to why most of the Plaintiff's complaint should be dismissed.

### *Fraud and Negligent Misrepresentation Claims*

3M argues that CDH's fraud and misrepresentation claims should be dismissed because the claims are barred by a contractual integration and no-reliance clause, the claims are based on non-actionable promises of future performance, and the negligent misrepresentation claim is barred by the economic loss doctrine.

The Defendant first argues that CDH's claims are barred by the agreement's integration and no-reliance clause. Section 12.1 of the agreement states, "Customer acknowledges that it has not been induced to enter into this agreement by any representation or statement, oral or written, not

4

contained in this agreement." 3M's argument relies on *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002), in which the court stated, "Parties to contracts who do want to head off the possibility of a fraud suit will sometimes insert a "no-reliance" clause into their contract . . . Since reliance is an element of fraud, the clause, if upheld . . . precludes a fraud suit."

CDH asserts and alleges that the statements it relied upon were included in the agreement; and, therefore, Section 12.1 does not bar the claim. At this stage of litigation it cannot be determined that CDH's claims for fraud and negligent misrepresentation are not based on representations or statements contained in the agreement.

3M also argues that CDH is barred from making these claims because the claims are based on promises of future performance and not of the present capabilities of the software. *See Desnick v. Am. Broad Cos.* 44 F.3d 1345, 1354 (7th Cir. 1995) (false promises were not actionable in Illinois).

In *Ottawa Strong & Strong v. McLeod Bishop Systems, Inc.*, 676 F. Supp. 159 (N.D. Ill. 1987) (*Ottawa Strong*), the court found that a plaintiff purchasing software, on the representation that it may be adequately modified to fit their business, should be entitled to protection for fraudulent misrepresentation. Noting that the plaintiff's position was not unusual in the world of computers and software often may be customized, the court stated, "Potential purchasers of these software programs must rely on software vendors' representations that the products can be adequately modified to fit their unique business requirements." *Ottawa Strong*, 676 F. Supp. at 160; *see also Stenograph Corp. v. Microcat Corp.*, No. 86 C 10231, 1989 WL 99543 (N.D. Ill. 1989) (statements about a company's ability to perform described present capabilities rather than future promises when taken as a whole).

The allegations by CDH describe 3M's present software capabilities rather than future promises, and dismissal is not warranted on this basis. *See Ottawa Strong*, 676 F. Supp. at 160.

Lastly, as to these claims, 3M argues that CDH's negligent misrepresentation claim is barred by the economic loss doctrine. Generally, a plaintiff may not recover in tort for purely economic losses arising from misrepresentations in the sale of goods. *See Moorman Mfg. Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982) (*Moorman*). The *Moorman* court recognized two exceptions to the rule, intentional misrepresentations and misrepresentations by a defendant in the business of supplying information. *Moorman*, 91 Ill. 2d at 88-89.

At this stage of litigation, CDH has sufficiently pled that 3M is in the business of supplying information and falls within the exception cited above. *See Rankow v. First Chicago Corp.*, 870 F.2d 356, 362 (7th Cir. 1989) ("A precise case specific inquiry is required to determine whether a particular enterprise is in the business of supplying information.").

*Illinois Consumer Fraud Act Claim V*

3M seeks to dismiss Claim V, for violation of the ICFA, on the grounds that the claim is barred by the statute of limitations, that the allegations do not give rise to a statutory consumer fraud claim, and that CDH doesn't satisfy the "consumer nexus" test.

The ICFA, 815 ILCS 505/1-505/12, prohibits, in pertinent part, "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to . . . the use or employment of any deception, fraud, false pretense, false promise or misrepresentation. . . . ." The plaintiff must also bring a claim for violation of the act within three years of the date the cause of action accrued. 815 ILCS 505/10a(e). "The accrual date is the date the plaintiff knows or reasonably

should know of his injury and also knows or reasonably should know it was wrongfully caused." *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994).

3M argues that, at the very latest, CDH's claim accrued shortly after January 1, 2001. CDH alleges that it was not until February 12, 2002, that CDH became aware of the injury. This is a factual question that cannot be properly determined on a motion to dismiss.

Defendant also argues that the ICFA claim should be dismissed because breach of contract allegations do not give rise to a statutory consumer fraud claim. "Illinois courts have consistently resisted attempts by litigants to portray otherwise ordinary breach of contract claims as causes of action under ICFA." *Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 275 Ill. App. 3d 452 (1995). Although the ICFA does not generally apply to ordinary contract disputes, CDH alleges more than lack of performance of the contract between 3M and CDH.

3M argues that CDH did not sufficiently plead the ICFA "consumer nexus" test. The "consumer nexus" test of the ICFA requires a relationship between 3M's alleged wrongdoing and consumers. *See Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-437 (7th Cir. 1996). At this stage of the litigation, CDH has sufficiently pled that 3M's conduct affected other consumer hospitals.

*Motion to Strike Damages*

Lastly, 3M seeks to strike damages beyond the amount CDH has paid to 3M in software license fees. 3M argues that the plain language of sections 9.2 and 9.3 of the agreement limits CDH's damages. Plaintiff argues that these terms do not apply to the type of damages it seeks. 3M's argument is based on the interpretation of the contract, which is inappropriate at this stage of the litigation.

## CONCLUSION

For the foregoing reasons, 3M's Motions to Dismiss and Motion to Strike are denied.

Dated: October 26, 2005

JOHN W. DARRAH
United States District Judge